# EXHIBIT A

Agreement of Indemnity
Dated November 6, 2006





RECEIVED MAR 2 2 ~~~~

**GREAT AMERICAN.**
INSURANCE COMPANIES

## AGREEMENT OF INDEMNITY

THIS AGREEMENT OF INDEMNITY, made and entered into this     6     day of    November     2006
by:

| | | |
|---|---|---|
| NELSON, INC. | Tax I.D. | 64-0821592 |
| NELSON PLUMBING, INC. | Tax I.D. | 64-0821592 |
| | Tax I.D. | |
| | Tax I.D. | |
| WILL NELSON SR | Social Security #: | -2506 |
| HATTIE NELSON | Social Security #: | -0535 |
| WILL NELSON II | Social Security #: | -8530 |
| | Social Security #: | |
| | Social Security #: | |
| | Social Security #: | |
| | Social Security #: | |
| | Social Security #: | |

(hereinafter, jointly, severally and /or collectively called Undersigned), and GREAT AMERICAN INSURANCE COMPANY, its Affiliates (including, but not limited to American Alliance Insurance Company, American National Fire Insurance Company and Agricultural Insurance Company), and any person or entity which they may procure to act as co-surety or reinsurer on any Bonds on behalf of the Undersigned at the request of any of the above (hereinafter called Surety).

### WITNESSETH:

WHEREAS, the Undersigned, in the performance of contracts and the fulfillment of obligations generally, whether in its own name solely or as co-adventurer with others, may desire, or be required to give or procure certain surety bonds, undertakings, bid or commitment letters, or other instruments of guarantee, and to renew, continue, or substitute the same from time to time; or new bonds, undertakings or instruments of guarantee with the same or different penalties and/or conditions may be desired or required, in renewal, continuation, extension or substitution thereof; any one or more of which are hereinafter called Bonds; or the Undersigned may request the Surety to refrain from canceling said Bonds; and

WHEREAS, at the request of the Undersigned and upon the express understanding that this Agreement of Indemnity (hereinafter Agreement) should be given, the Surety has executed or procured to be executed, and may from time to time hereafter execute or procure to be executed, Bonds on behalf of the Undersigned; and

WHEREAS, the Undersigned have a substantial, material and beneficial interest in obtaining Bonds or in the Surety's consideration of providing or procuring Bonds, or in the Surety's refraining from canceling said Bonds.

NOW, THEREFORE, in consideration of the premises and for other good and valuable consideration, the receipt and sufficiency of which is expressly acknowledged by the Undersigned, the Undersigned for themselves, their heirs, executors, administrators, successors and assigns, jointly and severally and/or collectively, hereby covenant and agree with the Surety, its successors and assigns, as follows:

### PARTIES

FIRST: This Agreement binds the Undersigned and their heirs, personal representatives, successors and assigns thereof, jointly, severally and/or collectively, to Surety in connection with all Bond(s) heretofore or hereafter executed, provided or procured by Surety.

### INDEMNITY/EXONERATION

SECOND: The Undersigned jointly, severally and/or collectively shall exonerate, indemnify, hold harmless and keep the Surety indemnified from and against any and all liability for losses, costs, and/or expenses of whatsoever kind or nature (including, but not limited to, interest, court costs, consultant or expert fees, and counsel fees) and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) By reason of having executed or procured the execution of Bonds on behalf of any of the Undersigned, (2) By reason of the failure of the Undersigned to perform or comply with any of the covenants and conditions of this Agreement or (3) In enforcing any of the terms, covenants or conditions of this Agreement. Payment by reason of the aforesaid causes shall be made to the Surety by the Undersigned, upon demand by the Surety, as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefor. The amount of such payment to the Surety by the Undersigned shall be determined by the Surety and the Surety's demand for payment hereunder may at the Surety's option be in addition to and not in lieu of or substitution for any other collateral that may have been previously deposited with Surety by or on behalf of the Undersigned. The Surety shall have the right to use the payment, or any part thereof, in payment or settlement of any liability, loss or expense for which the Undersigned would be obligated to indemnify the Surety under the terms of this Agreement. The Surety shall have no obligation to invest or to provide a return on the payment or any other collateral deposited with the Surety. The Undersigned shall be entitled to the refund of any unused portion of the payment upon termination of the liability of the Surety on all Bonds and the performance by the Undersigned of all obligations to the Surety under the terms of this Agreement. The Surety's demand shall be sufficient if sent by registered or certified mail, by facsimile transmission, or by personal service to the Undersigned at the addresses stated herein, or at the addresses of the Undersigned last known to the Surety, regardless of whether such demand is actually received. The Undersigned acknowledge that the failure of the Undersigned to deposit with the Surety, immediately upon demand, the sum demanded by the Surety as payment shall cause irreparable harm to the Surety for which the Surety has no adequate remedy at law. The Undersigned agree that the Surety shall be entitled to injunctive relief for specific performance of any or all of the obligations of the Undersigned under this Agreement including the obligation to pay to the Surety the sum demanded and hereby waive any claims or defenses to the contrary. In the event of any payment of any kind by the Surety, the Undersigned further agree that in any accounting between the Surety and the Undersigned, the Surety shall be entitled to charge for any and all disbursements made by the Surety in good faith in and about the matters herein contemplated by this Agreement under the belief that the Surety is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient for the Surety to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers, invoices, an affidavit or other evidence of any such payments made by the Surety shall be prima facie evidence of the fact and amount of the Undersigned's liability to the Surety. Each of the Undersigned authorizes and empowers any attorney in any state of the United States, at the request of Surety, to waive the issuing and service of process and to appear for and confess judgement against any of the Undersigned for any sum or sums due under this Agreement, together with the costs of suit, without stay of execution, waiving inquisition and condemnation of real estate; and to release all errors and waive all right of appeal and stay of execution on behalf of the Undersigned.

## ASSIGNMENT

THIRD:  The Undersigned hereby consenting, will assign, transfer and set over, and do hereby assign, transfer and set over to the Surety, as collateral, to secure the obligations in any and all of the paragraphs of this Agreement and any other indebtedness and liabilities of the Undersigned to the Surety, whether heretofore or hereafter incurred, the assignment to become effective retroactive to the date of the first Bond, but only in the event of (1) any abandonment, forfeiture or breach of any contracts referred to in the Bonds or of any breach or alleged breach of any Bonds; or (2) of any breach or alleged breach of the provisions of any of the paragraphs of this Agreement; or (3) of a default or alleged default in discharging such other indebtedness or liabilities when due; or (4) of any assignment by the Undersigned  for the benefit of creditors, or of the appointment or of any application for the appointment of a receiver or trustee for the Undersigned whether insolvent or not; or (5) of any proceeding which deprives the Undersigned of the use of any of the machinery, equipment, plant, tools or  material referred to in section (b) of this paragraph; or (6) of the Undersigned's dying, absconding, disappearing, incompetency, being convicted of a felony, or imprisonment if the Undersigned be an individual:  (a) All the rights of the Undersigned in, and growing in any manner out of the Bonds or any contracts referred to in the Bonds; (b) All the rights, title and interest of the Undersigned in and to all machinery, equipment, vehicles, plant, tools and materials which are now, or may hereafter be, about or upon the site or sites of any and all of the contractual work referred to in the Bonds or elsewhere, including materials purchased for or chargeable to any and all contracts referred to in the Bonds, materials which may be in process of construction, in storage elsewhere, or in transportation to any and all of said sites; (c) All the rights, title and interest of the Undersigned in and to all subcontracts let or to be let in connection with any and all contracts referred to in the Bonds, and in and to all surety bonds supporting such subcontracts; (d) All actions, causes of actions, claims and/or the proceeds therefrom and any demands whatsoever which the Undersigned may have or acquire against any party, including but not limited to owners, obligees, subcontractors, laborers or materialmen, architects, engineers or any person furnishing or agreeing to furnish or supply labor, material , supplies, machinery, tools or other equipment in connection with or on account of any and all contracts referred to in the Bonds; and against any surety or sureties of any party including, but not limited to, prime contractors, subcontractors, laborers, or materialmen; (e) Any and all percentages retained and any and all sums that may be due or hereafter become due on account of any and all contracts referred to in the Bonds and all other contracts whether bonded or not in which the Undersigned has an interest; (f) any and all accounts receivable, marketable securities, rents, proceeds of sale, instruments, chattel paper, letters of credit, documents of title, bills of lading, federal tax refunds, state and local tax refunds, and general intangibles; (g) any and all policies of insurance. The Undersigned agree that the Surety may add such schedules to this Agreement, as it deems advisable, describing more specifically items of security covered by this Assignment.  Notwithstanding the foregoing, Undersigned further agree to execute and deliver to the Surety, upon its request, such further or additional instruments as may be necessary or desirable in the Surety's sole and absolute discretion to permit or facilitate either the filing of this Agreement as a Financing Statement and/or Security Agreement, or the filing of separate Financing Statements and/or Security Agreements, based upon this Agreement, in such states, counties, and/or other places as the Surety may deem necessary or advisable.

## TRUST FUNDS

FOURTH: Undersigned covenant and agree that all funds received by them, or due or to become due under any contract covered by any Bond are trust funds whether in the possession of the Undersigned or another, for the benefit of all parties to whom the Undersigned incurs obligations in the performance of the contract covered by the Bond(s) and/or for the benefit of, payment to or reimbursement of the Surety for any liability, loss or expense the Surety may incur under the Bond(s) or in enforcing this Agreement.  If the Surety discharges any such obligation, the Surety shall be entitled to assert the claims of any such party to the trust funds.  The Undersigned shall, upon demand of the Surety and in implementation of the trust, open an account or separate accounts with a bank designated by Surety, which account(s) shall be designated as a trust account(s) for the deposit of such trust funds and the Undersigned shall deposit therein all monies received pursuant to said contract. Withdrawals from such account(s) shall be by check or other instrument signed by the Undersigned and countersigned by a representative of the Surety. Notwithstanding anything to the contrary herein above this dedication may be implemented in any other manner provided at law or in equity.

## UNIFORM COMMERCIAL CODE

FIFTH:  This Agreement or a copy, photographic, xerographic or other reproduction or copy of this Agreement shall constitute a Security Agreement to the Surety and also a Financing Statement, both in accordance with the provisions of the Uniform Commercial Code of every jurisdiction wherein such Code is in effect and may be so used by the Surety without in any way abrogating, restricting or limiting the rights of the Surety under this Agreement or under law, or in equity.  Undersigned also agree that the failure of the Surety to file this Agreement shall not release or excuse any of the obligations of the Undersigned under this Agreement.

## TAKEOVER

SIXTH:  In the event of any breach, delay or default asserted by the obligee in connection with any Bond or any contract covered by the Bonds, or if the Undersigned has suspended or ceased work on any contract or contracts covered by any Bonds, or failed to pay obligations incurred in connection therewith, or in the event of the death, disappearance, Undersigned's conviction for a felony, imprisonment, incompetency, insolvency, or bankruptcy of the Undersigned, or the appointment of a receiver or trustee for the Undersigned or the property of the Undersigned, or in the event of an assignment for the benefit of creditors of the Undersigned, or if any action is taken by or against the Undersigned under or by virtue of the National/Federal Bankruptcy Act, or should reorganization or arrangement proceedings be filed by or against the Undersigned under said Act,  or if any action is taken by or against the Undersigned under the insolvency laws of any state, possession, or territory of the United States the Surety shall have the right, but not the obligation, at its option and in its sole discretion, and is hereby authorized, with or without exercising any other right or option conferred upon it by law or in the terms of this Agreement, to take possession of any part or all of the work under any contract or contracts covered by any Bonds, and at the expense of the Undersigned to complete or arrange for the completion of the same, and the Undersigned shall promptly upon demand pay to the Surety all losses, costs, and expenses so incurred.

## JOINT CHECKS

SEVENTH: In the event of (1) any breach or alleged breach of this Agreement; (2) any breach or alleged breach of any contract covered by any Bond(s); or (3) any other event(s) that might expose Surety to liability under the Bond(s) the Undersigned agree that upon written request of the Surety, the Undersigned shall direct any obligee or project owner as may be designated by Surety to deposit any further progress payments or retainage payments in relation to the contract covered by the Bond(s) to a specified bank account, or at the Surety's option to make the check(s) payable jointly to the Undersigned and the Surety, or at the Surety's option to make check(s) payable to the Undersigned and any other payee designated by the Surety.

## CHANGES

EIGHTH:  The Surety is authorized and empowered, without notice to or knowledge of the Undersigned, to assent to any change whatsoever in the Bonds, and/or any contracts referred to in the Bonds, and/or in the general conditions, plans and/or specifications accompanying said contracts, including, but not limited to, any change in the time for the completion of said contracts and to payments or advances thereunder before the same may be due, and to assent to or take any assignment or assignments, to execute or consent to the execution of any continuations, extensions or renewals of the Bonds and to execute any substitute or substitutes therefor, with the same or different conditions, provisions and obligees and with the same or larger or smaller penalties, it being expressly understood and agreed that the Undersigned  shall remain bound under the terms of this Agreement even though any such assent by the Surety does or might substantially increase the liability of said Undersigned.

## ADVANCES

NINTH:  The Surety, in its sole discretion, is authorized and empowered, but not obligated, to guarantee loans, to advance or lend to the Undersigned any money, as the Surety may see fit, for the purpose of any contracts referred to in, or guaranteed by the Bonds, and all money expended in the completion of any such contracts by the Surety, or lent or advanced from time to time to the Undersigned, or guaranteed by the Surety for the purposes of any such contracts, and all costs, and expenses incurred by the Surety in relation thereto, unless repaid with legal interest by the Undersigned to the Surety when due, shall be presumed to be a loss by the Surety for which the Undersigned  shall be responsible, notwithstanding that said money or any part thereof might not be so used by the Undersigned.

Contract Surety Form (3/29/00 Edition)                                    2

## BOOKS AND RECORDS

TENTH: At any time, and until such time as the liability of the Surety under any and all Bonds is terminated, the Surety shall have the right to examine and copy the books, records, and accounts of the Undersigned; and any bank depository, materialman, supply house, or other person, firm or corporation when requested by the Surety is hereby authorized and directed by the Undersigned to furnish the Surety with any information requested including, but not limited to, the status of the work under contracts being performed by the Undersigned, the condition of the performance of such contracts and payments of accounts.

## DECLINE EXECUTION

ELEVENTH: The Surety may at its option and sole discretion decline to execute any Bond and the Undersigned agree to make no claim to the contrary in consideration of the Surety's receiving this Agreement; and if the Surety shall execute Bid, Proposal Bonds or Bid or Commitment Letters, Surety shall have the right at its option and sole and unfettered discretion to decline to execute any or all of the Bonds that may be required in connection with any award that may be made under the proposal for which the Bid, Proposal Bond or Bid or Commitment Letter is given and such declination shall not diminish or alter the liability of the Undersigned to the Surety under this Agreement that may arise by reason of having executed the Bid, Proposal Bond or Bid or Commitment Letters.

## NOTICE OF EXECUTION

TWELFTH: The Undersigned hereby waive notice of the execution of Bonds and of the acceptance of this Agreement, and the Undersigned hereby waive all notice of any default, or any other act or acts giving rise to any claim under said Bonds, as well as notice of any and all liability of the Surety under Bonds, and any all liability on their part hereunder, to the end and effect that, the Undersigned shall be and continue to be liable hereunder, notwithstanding any notice of any kind to which they might otherwise have been or be entitled, and notwithstanding any defenses they might otherwise have been entitled to assert.

## HOMESTEAD

THIRTEENTH: The Undersigned hereby waive, so far as their respective obligations under this Agreement are concerned, all rights to claim any property, including their respective homesteads, as exempt from levy, execution, sale or other legal process under the laws of any state, territory, or possession.

## SETTLEMENT

FOURTEENTH: The Surety shall have the right to adjust, settle or compromise any claim, demand, suit, arbitration proceeding or judgment upon the Bonds. The liability of the Undersigned to the Surety under this Agreement shall extend to and include all amounts paid by the Surety under the belief that: (1) the Surety was or might be liable therefor; or (2) such payments were necessary or advisable to protect any of the Surety's rights or to avoid or lessen Surety's liability or alleged liability. Further, the liability of the Undersigned to the Surety under this Agreement shall include interest from the date of Surety's payment at the maximum rate permitted in the jurisdiction in which this Agreement is enforced, or is enforceable. Further the Surety shall have the right to adjust, settle, prosecute, compromise or pursue recovery in connection with any claim, demand, suit, arbitration proceeding or judgment in connection with any contract whether bonded or not, or in connection with any matters that are the subject of Paragraph 3 "Assignments" of this Agreement.

## SURETIES

FIFTEENTH: In the event the Surety procures the execution of the Bonds by other sureties, or executes the Bonds with co-sureties, or reinsures any portion of said Bonds with reinsuring sureties, then all the terms and conditions of this Agreement shall inure to the benefit of such other sureties, co-sureties and reinsuring sureties, as their interests may appear.

## SUITS

SIXTEENTH: Separate suits may be brought hereunder as causes of action accrue, and the bringing of suit or the recovery of judgment upon any cause of action against any or all of the Undersigned shall not prejudice or bar the bringing of other suits upon other causes of action, or the bringing of other suits, or the recovery of judgment or judgments against the Undersigned, whether theretofore or thereafter arising. The Undersigned agree that each Undersigned executing this Agreement is an agent for all of the other Undersigned executing this Agreement for the purpose of accepting service of any process in the jurisdiction in which the Undersigned accepting the process resides, is domiciled, is doing business or is found.  In the event that Surety shall file suit at law or in equity to enforce the terms of this Agreement, Surety shall be entitled to recover its own attorney's fees and expenses in connection with such suit. The Surety is hereby expressly authorized by the Undersigned to compromise or settle any claim based upon this Agreement with any one or more of the Undersigned individually, and such compromise or settlement shall not affect the liability of any non-settling Undersigned to the Surety.

## OTHER INDEMNITY

SEVENTEENTH: That the Undersigned shall continue to remain bound under the terms of this Agreement even though the Surety may from time to time heretofore or hereafter, with or without notice to or knowledge of the Undersigned accepted or released other agreements of indemnity or collateral in connection with the execution or procurement of said Bonds, or obtained or recovered other judgments from the Undersigned or others, it being expressly understood and agreed by the Undersigned that any and all other rights which the Surety may have or acquire against the Undersigned and/or others under any such other or additional agreements of indemnity, judgments, or collateral shall be in addition to, and not in lieu of, the rights afforded the Surety under this Agreement.

## INVALIDITY

**EIGHTEENTH:** In case any of the parties mentioned in this Agreement fail to execute the same, or in case the execution hereof by any of the parties be defective or invalid for any reason, such failure, defect or invalidity shall not in any manner affect the validity of this Agreement or the liability hereunder of any of the other parties executing the same, but each and every other party so executing shall be and remain fully bound and liable hereunder to the same extent as if such failure, defect or invalidity had not existed. It is understood and agreed by the Undersigned that the rights, powers, and remedies given the Surety under this Agreement shall be and are in addition to, and not in lieu of, any and all other rights, powers, and remedies which the Surety may have or acquire against the Undersigned or others whether by the terms of any other agreement or by operation of law or otherwise.

## ATTORNEY IN FACT

**NINETEENTH:** The Undersigned hereby irrevocably nominate, constitute, appoint and designate the Surety as their attorney-in-fact with the right, but not the obligation, to exercise all of the rights of the Undersigned assigned, transferred and set over to the Surety in this Agreement, and in the name of the Undersigned to make, execute, and deliver any and all additional or other assignments, documents or papers deemed necessary and proper by the Surety in order to give full effect not only to the intent and meaning of the within assignments, but also to the full protection intended to be herein given to the Surety under all other provisions of this Agreement. The Undersigned hereby ratify and confirm all acts and actions taken and done by the Surety as such attorney-in-fact.

## TERMINATION

**TWENTIETH:** The Undersigned expressly recognize and agree that this Agreement is a continuing obligation applying to and indemnifying the Surety as to any and all Bonds heretofore or hereafter executed by the Surety (whether contracting alone or as a co-adventurer) until this Agreement shall be fully and finally terminated in the manner herein provided. No change in the marital, employment, or economic status or condition of any of the Undersigned shall in any manner abrogate, waive, or alter any provision of this paragraph or this Agreement. This Agreement may only be terminated by the Undersigned effective twenty days after the Surety's receipt of written notice sent by registered mail addressed to the Bond Department of the Surety at its Administrative Office at 580 Walnut Street, Cincinnati, Ohio 45202, but any such notice of termination shall not operate to modify, bar, or discharge the Undersigned as to the Bonds that may have been executed before the effective date of termination.

## MODIFICATIONS

**TWENTY FIRST:** This Agreement may not be changed or modified orally. No change or modification shall be effective unless made by written endorsement executed to form a part hereof.

## SEVERABILITY

**TWENTY SECOND:** If any provision or provisions of the Agreement shall be void or unenforceable under any law governing its construction or enforcement, this Agreement shall not be voided or vitiated thereby, but shall be construed and enforced with the same effect as though such provision or provisions were omitted.

## GENERAL PROVISIONS

A) The Undersigned will pay to the Surety in such manner as may be agreed upon all premiums and charges of the Surety for the Bonds in accordance with its rate filings, its manual of rates, or as otherwise agreed upon, until the Undersigned shall serve evidence satisfactory to the Surety of its discharge or release from the Bonds and all liability by reason thereof.

B) The Undersigned agree that Surety may add additional parties or release parties to this Agreement by Rider, Endorsement, Amendment or by any other means acceptable to Surety. Further, the Undersigned agree that the release of any party to this Agreement shall not release any other party. The failure of any party to perform any of its obligations under this Agreement shall not excuse the performance of any other party under this Agreement.

C) Each and every right, remedy, power and/or entitlement afforded the Surety pursuant to this Agreement, and/or in any other agreements among the Surety and the Undersigned, or by law, equity or statute, shall be cumulative, and the exercise by the Surety of any right, power or remedy shall not preclude the Surety's simultaneous or subsequent exercise of any and all other rights, powers and/or remedies. No failure or delay by the Surety to exercise any right, power or remedy provided pursuant to this Agreement shall impair or be construed to be a waiver of the Surety's ability or entitlement to exercise any other right, power or remedy. The exercise of, or the failure to exercise any right, power or remedy at any time, whether derived from this Agreement, any other agreement, under law or in equity, shall not be deemed to be an election of remedy or a waiver of any other right, power or remedy.

D) This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. The Undersigned agree that there have been no oral or other agreements of any kind as a condition precedent or to induce the execution and delivery of this Agreement by any party.

E) Undersigned hereby authorize the Surety to settle or compromise any claim based upon this Agreement with any Undersigned individually, or with some but fewer than all Undersigned and such settlement or compromise shall not affect the liability of any other parties to this Agreement.

F) Throughout this Agreement, all references in the singular shall also refer to the plural, and vice versa, all references in the conjunctive shall also refer to the disjunctive, and vice versa, and all references in the past tense shall also refer to the present or future tense, and vice versa.

G) The Undersigned shall give Surety prompt notice of any claim, demand, suit, arbitration proceeding or other action which purports to be instituted or asserted on or against any Bond and shall fully cooperate with the Surety in the defense thereof.

By executing this Agreement you are bound jointly, severally and/or collectively to the Surety with respect to all Bonds executed, provided or procured or to be executed, provided or procured by Surety at any time in behalf of any of the Undersigned, and with respect to all undertakings of this Agreement.

In making this application for surety bonds, it is understood that an investigative consumer report may be prepared whereby pertinent information concerning your character, reputation, personal characteristics and mode of living may be obtained. Information as to the nature and scope of this report may be obtained upon written request.

Contract Surety Form (3/29/00 Edition)                    4

IN WITNESS WHEREOF, we have signed and sealed the day and year first above written.

Attest:                                          NELSON, INC.

By: _____        By: _____
WILL NELSON II. - SECRETARY              (Name & Title)   WILL NELSON SR. - PRESIDENT

                                                 NELSON PLUMBING, INC.

By: _____        By: _____
                                                 (Name & Title)   WILL NELSON, SR. - PRESIDENT

By: _____        By: _____
                                                 (Name & Title)

By: _____        By: _____
                                                 (Name & Title)

                                                 By: _____
                                                 (Name)   WILL NELSON, SR. - INDIVIDUALLY

                                                 By: _____
                                                 (Name)   HATTIE NELSON - INDIVIDUALLY

                                                 By: _____
                                                 (Name)   WILL NELSON II - INDIVIDUALLY

                                                 By: _____
                                                 (Name)

                                                 By: _____
                                                 (Name)

                                                 By: _____
                                                 (Name)

                                                 By: _____
                                                 (Name)

                                                 By: _____
                                                 (Name)

                                                 Great American Insurance Company

Witness:
By: _____        By: _____
                                                 (Surety Signature & Title)

Contract Surety Form (3/29/00 Edition)                5

*(For Acknowledgment of Corporate Signatures)*

## CORPORATE ACKNOWLEDGMENT

STATE OF <u>Tennessee</u> }
COUNTY OF <u>Shelby</u> } ss.:

On <u>01/29/07</u> before me, <u>Ronny Porter</u> personally appeared
(Date)                                  (Name, Title of Officer-e.g. Jane Doe, Notary)

<u>WILL NELSON SR.</u> personally known to me or proved to me on the basis of satisfactory
(Name of Signer)

evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal. _____

(Signature of Notary)
Commission Expiration Date: _____

MY COMMISSION EXPIRES:
March 18, 2009

*[Notary seal: STATE OF TENNESSEE NOTARY PUBLIC SHELBY COUNTY]*

## CORPORATE ACKNOWLEDGMENT

STATE OF _____ }
COUNTY OF _____ } ss.:

On _____ before me, _____ personally appeared
(Date)                                  (Name, Title of Officer-e.g. Jane Doe, Notary)

_____ personally known to me or proved to me on the basis of satisfactory
(Name of Signer)

evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal. _____

(Signature of Notary)
Commission Expiration Date: _____

## CORPORATE ACKNOWLEDGMENT

STATE OF _____ }
COUNTY OF _____ } ss.:

On _____ before me, _____ personally appeared
(Date)                                  (Name, Title of Officer-e.g. Jane Doe, Notary)

_____ personally known to me or proved to me on the basis of satisfactory
(Name of Signer)

evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal. _____

(Signature of Notary)
Commission Expiration Date: _____

*(For Acknowledgment of Partnership Signatures)*

## PARTNERSHIP ACKNOWLEDGMENT

STATE OF _____ }
COUNTY OF _____ } ss.:

On _____ before me, _____ personally appeared
(Date)                                  (Name, Title of Officer-e.g. Jane Doe, Notary)

_____ personally known to me or proved to me on the basis of satisfactory
(Name of Signer)

evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal. _____

(Signature of Notary)
Commission Expiration Date: _____

Contract Surety Form (3/29/00 Edition)        6

(For Acknowledgment of Individual Signatures)

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF _Tennessee_ }
COUNTY OF _Shelby_ } ss.:

On _01/29/07_ before me, _Bonny Porter_ _____ personally appeared
(Date)                                          (Name, Title of Officer-e.g. Jane Doe, Notary)

WILL NELSON SR. AND HATTIE NELSON _____ personally known to me or proved to me on the basis of satisfactory
(Name of Signer)

evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.   _Bonny Porter_
                                      (Signature of Notary)          MY COMMISSION EXPIRES:
                                      Commission Expiration Date:_____    March 18, 2009

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF _Tennessee_ }
COUNTY OF _Shelby_ } ss.:

On _01/29/07_ before me, _Bonny Porter_ _____ personally appeared
(Date)                                          (Name, Title of Officer-e.g. Jane Doe, Notary)

WILL NELSON II _____ personally known to me or proved to me on the basis of satisfactory
(Name of Signer)

evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.   _Bonny Porter_
                                      (Signature of Notary)          MY COMMISSION EXPIRES:
                                      Commission Expiration Date:_____    March 18, 2009

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF _____ }
COUNTY OF _____ } ss.:

On _____ before me, _____ personally appeared
(Date)                                          (Name, Title of Officer-e.g. Jane Doe, Notary)

_____ personally known to me or proved to me on the basis of satisfactory
(Name of Signer)

evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal. _____
                                      (Signature of Notary)
                                      Commission Expiration Date:_____

## SURETY ACKNOWLEDGMENT

STATE OF _Kentucky_ }
COUNTY OF _Jefferson_ } ss.:

On _7/12/07_ before me, _____ _Diane Riggs_ _____ personally appeared
(Date)                                          (Name, Title of Officer-e.g. Jane Doe, Notary)

_Charles E. Williams_ _____ personally known to me or proved to me on the basis of satisfactory
(Name of Signer)

evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal. _Diane Riggs_
                                      (Signature of Notary)
                                      Commission Expiration Date: _3-26-2008_

Contract Surety Form (3/29/00 Edition)          7

VAN METER INS          Fax:6152611901          Oct 12 2007  13:21     P.03



RESOLUTION
(To be used with Agreement of Indemnity)
Nelson Plumbing, Inc.

At a **Regular** meeting of the Board of Directors of the _____(hereinafter called Company), duly called and held on the **6** day of **November** 20 **06**, a quorum being present, the following Preambles and Resolutions were adopted:

"WHEREAS, this Company is materially interested by reason of _____ **Common Ownership** _____ in the transaction concerning

**Various Bonds** _____ and in future transactions in connection with which the **Nelson, Inc.**

(Insert name of all Undersigned Companies except Indemnifying Company)

have applied to the GREAT AMERICAN INSURANCE COMPANY, and its Affiliates Great American Alliance Insurance Company, Great American Insurance Company of New York and Great American Assurance Company (hereinafter called Surety) for a bond or undertaking and will from time to time make application to Surety for additional bonds or undertakings; and

WHEREAS, the Surety is willing to execute as Surety such bonds or undertakings heretofore applied for, and may in its discretion execute additional bonds or undertakings in connection with the aforementioned future transactions, upon the written indemnity of this Company.

RESOLVED that the officers authorized to execute documents in behalf of this Company, be and they are hereby authorized and empowered to execute any indemnity agreement or agreements, specific and/or general, required by the Surety as consideration for the execution by it of any bonds or undertakings in behalf of **Nelson, Inc.**

(Insert same Undersigned Companies as above)

in connection with the matter or transaction above described and with the aforementioned future transactions.

RESOLVED FURTHER, that the officers having power to sign and execute documents on behalf of the Company be and they are hereby authorized and empowered, at any time prior to or subsequent to the execution by said Surety of any such bond or bonds, undertaking or undertakings to execute any and all amendments to said indemnity agreement and/or agreements; and to execute any other or further agreements relating to any such bond or bonds, undertaking or undertakings or to any collateral that may have been deposited with the Surety in connection therewith; and to take any and all other actions that may be requested or required by the Surety in the premises."

I, **Hattie Nelson** Secretary of **Nelson Plumbing, Inc.** have compared the foregoing
(Name of Company Indemnifying)
preambles and resolutions with the original thereof, as recorded in the Minute Book of said Company, and do certify that the same are correct and true transcripts therefrom, and of the whole of said original preambles and resolutions.

The Title of the officers authorized to execute documents in behalf of this Company are:

**Willie Nelson - Owner**

Given under my hand and the seal of the Company, in the
City of **Memphis** State of **Tennessee**
this **17th** day of **October** 20 **07**.

SEAL

**Hattie Nelson**
Secretary

F9673 - 12/00 Edition

VAN METER INS        Fax:6152611901        Oct 12 2007  13:21    P.02

## RESOLUTION
(To be used with Agreement of Indemnity)

Nelson, Inc.

At a __Regular__ meeting of the Board of Directors of the _____ (hereinafter called Company), duly called and held on the __6__ day of __November__ 20__06__, a quorum being present, the following Preambles and Resolutions were adopted:

"WHEREAS, this Company is materially interested by reason of ___Common Ownership___ in the transaction concerning _____

__Various Bonds__ _____ and in future transactions in connection with which the_____

__Nelson Plumbing, Inc.__
(Insert name of all Undersigned Companies except Indemnifying Company)

have applied to the GREAT AMERICAN INSURANCE COMPANY, and its Affiliates Great American Alliance Insurance Company, Great American Insurance Company of New York and Great American Assurance Company (hereinafter called Surety) for a bond or undertaking and will from time to time make application to Surety for additional bonds or undertakings; and

WHEREAS, the Surety is willing to execute as Surety such bonds or undertakings heretofore applied for, and may in its discretion execute additional bonds or undertakings in connection with the aforementioned future transactions, upon the written indemnity of this Company.

RESOLVED that the officers authorized to execute documents in behalf of this Company, be and they are hereby authorized and empowered to execute any indemnity agreement or agreements, specific and/or general, required by the Surety as consideration for the execution by it of any bonds or undertakings in behalf of __Nelson Plumbing, Inc.__
(Insert same Undersigned Companies as above)
in connection with the matter or transaction above described and with the aforementioned future transactions.

RESOLVED FURTHER, that the officers having power to sign and execute documents on behalf of the Company be and they are hereby authorized and empowered, at any time prior to or subsequent to the execution by said Surety of any such bond or bonds, undertaking or undertakings to execute any and all amendments to said indemnity agreement and/or agreements; and to execute any other or further agreements relating to any such bond or bonds, undertaking or undertakings or to any collateral that may have been deposited with the Surety in connection therewith; and to take any and all other actions that may be requested or required by the Surety in the premises."

I __Hattie Nelson__ Secretary of __Nelson, Inc.__
(Name of Company Indemnifying)
have compared the foregoing preambles and resolutions with the original thereof, as recorded in the Minute Book of said Company, and do certify that the same are correct and true transcripts therefrom, and of the whole of said original preambles and resolutions.

The Title of the officers authorized to execute documents in behalf of this Company are:

__Willie Nelson - President__    __Will Nelson II - Vice President__

Given under my hand and the seal of the Company, in the
City of __Memphis__ State of __Tennessee__
this __17th__ day of __October__ 20__07__.

SEAL

__Hattie Nelson__
Secretary

F9673 - 12/00 Edition