# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | | |
|---|---|---|
| GREAT AMERICAN INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| NELSON, INC., WILLIE NELSON, SR., and HATTIE NELSON, | ) ) ) ) | Case No. 2:16-cv-02283-JPM-cgc |
| Defendants. | ) ) | |

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Before the Court is Plaintiff Great American Insurance Company ("GAIC")'s Motion for Summary Judgment, filed December 23, 2016. (ECF No. 25.) Defendants Nelson, Inc., Willie Nelson, Sr., and Hattie Nelson filed a response in opposition on January 20, 2017. (ECF No. 26.) Plaintiff filed a reply on February 3, 2017 (ECF No. 30), and amended that reply with leave of Court on March 21, 2017 (ECF No. 34.) For the reasons stated below, the Court GRANTS in part and DENIES in part Plaintiff's Motion for Summary Judgment (ECF No. 25). Specifically, the Court GRANTS summary judgment in favor of Plaintiff on the issue of Defendant Nelson, Inc.'s breach of the Indemnity Agreement; DENIES summary judgment in favor of Plaintiff on the issue of Defendant Nelson, Inc.'s breach of the Settlement Agreement; GRANTS Plaintiff's request for specific performance under the Indemnity Agreement; and GRANTS Plaintiff's request for attorneys' fees and costs under the Indemnity Agreement. This Order does not address claims against Defendants Willie Nelson, Sr. and Hattie Nelson pursuant to an automatic stay under 11 U.S.C. § 362.

I. **BACKGROUND**

On November 6, 2006, Plaintiff GAIC and Defendants executed an Indemnity Agreement. (ECF No. 1-5; ECF No. 25-2 ¶ 8.) The Indemnity Agreement provided that the Defendants would indemnify GAIC in return for GAIC issuing performance and payment bonds necessary for Defendant Nelson, Inc. to secure construction contracts with various public and private clients. (ECF No. 1-5; ECF No. 25-2 ¶ 7.) The Indemnity Agreement also contained other provisions, such as a requirement that any funds associated with the secured construction contracts received by Defendants would be deposited into a separate trust account, and that GAIC would be entitled to attorneys' fees or costs for suits relating to the Indemnity Agreement. (ECF No. 1-5; ECF No. 25-2 ¶ 26.)

In July 2009, Nelson, Inc. secured a contract with the United States Army Corps of Engineers ("USACE") for construction of stone dikes (hereinafter the "Stone Dike Contract"). (ECF No. 25-2 ¶ 5.) GAIC then issued performance and payment bonds on behalf of Nelson, Inc. for the Stone Dike Contract. (Id. ¶ 6.)

On February 9, 2010, the USACE terminated Nelson Inc.'s right to proceed with further work on the Stone Dike Contract. (Id. ¶ 10.) Subcontractors and suppliers of the Defendants then sought payment from GAIC. (See id. ¶ 11.) GAIC made these payments after April 27, 2010. (Id.) Defendants did not reimburse GAIC, and thus GAIC brought suit against Defendants in September 2010. (ECF No. 25-2 ¶ 12; ECF No. 26-3 ¶ 1.)

In February 2012, GAIC and Defendants Willie Nelson, Sr. and Hattie Nelson entered into a settlement agreement (hereinafter the "Settlement Agreement"). (ECF No. 25-2 ¶ 17.) The Settlement Agreement required, among other things, that Willie Nelson, Sr. and Hattie Nelson make several payments to GAIC as well as assist GAIC in collecting remaining contract

funds, such as for those fund associated with the Stone Dike Contract. (Id.) Both Willie Nelson, Sr. and Hattie Nelson failed to make full payments to GAIC as set out in the Settlement Agreement. (See id. ¶ 24; see also ECF No. 26-2 ¶¶ 24, 29.)

On December 16, 2015, the Armed Services Board of Contract Appeals found that USACE improperly terminated Nelson, Inc.'s Stone Dike Contract, which resulted in Nelson, Inc. receiving a monetary settlement between USACE and Nelson, Inc. (ECF No. 25-2 ¶ 23.) In February 2016, Nelson, Inc. received a payment of $222,108.00 from USACE for the Stone Dike Contract. (Id. ¶ 27.)

On April 27, 2016, GAIC filed the instant action for breach of the Settlement and Indemnity Agreements, and seeking injunctive relief. (ECF No. 1.) Defendants filed an Answer on June 7, 2016. (ECF No. 15.)

On December 23, 2016, GAIC filed a Motion for Summary Judgment. (ECF No. 25.) Defendants Nelson, Inc., Willie Nelson, Sr., and Hattie Nelson filed a response in opposition on January 20, 2017. (ECF No. 26.) On January 20, 2017, Defendants Willie Nelson, Sr. and Hattie Nelson filed a Notice of Bankruptcy. (ECF Nos. 27-28.) Plaintiff filed a reply to Defendant's response the Motion for Summary Judgment on February 3, 2017 (ECF No. 30), and amended that reply with leave of Court on March 21, 2017 (ECF No. 34.)

## II.     LEGAL STANDARD: Summary Judgment

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' for purposes of summary judgment if proof of that fact would establish or refute an essential element of the cause of action or defense." Bruederle v. Louisville Metro Gov't, 687 F.3d 771, 776 (6th Cir. 2012).

"In considering a motion for summary judgment, [the] court construes all reasonable inferences in favor of the nonmoving party." Robertson v. Lucas, 753 F.3d 606, 614 (6th Cir. 2014) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact." Mosholder v. Barnhardt, 679 F.3d 443, 448 (6th Cir. 2012) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

"Once the moving party satisfies its initial burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact." Mosholder, 679 F.3d at 448-49; see also Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587. "When the non-moving party fails to make a sufficient showing of an essential element of his case on which he bears the burden of proof, the moving parties are entitled to judgment as a matter of law and summary judgment is proper." Martinez v. Cracker Barrel Old Country Store, Inc., 703 F.3d 911, 914 (6th Cir. 2013) (quoting Chapman v. UAW Local 1005, 670 F.3d 677, 680 (6th Cir. 2012) (en banc)); see also Kalich v. AT & T Mobility, LLC, 679 F.3d 464, 469 (6th Cir. 2012).

In order to "show that a fact is, or is not, genuinely disputed," both parties must do so by "citing to particular parts of materials in the record," "showing that the materials cited do not establish the absence or presence of a genuine dispute," or showing "that an adverse party cannot produce admissible evidence to support the fact." Bruederle, 687 F.3d at 776 (alterations in original) (quoting Fed. R. Civ. P. 56(c)(1)); see also Mosholder, 679 F.3d at 448 ("To support its motion, the moving party may show 'that there is an absence of evidence to support the nonmoving party's case'" (quoting Celotex Corp., 477 U.S. at 325)). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the

facts are jury functions, not those of a judge[.]" Martinez, 703 F.3d at 914 (alteration in original) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).

"The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "[T]he district court has no 'duty to search the entire record to establish that it is bereft of a genuine issue of material fact.'" Pharos Capital Partners, L.P. v. Deloitte & Touche, 535 F. App'x 522, 523 (6th Cir. 2013) (per curiam) (quoting Tucker v. Tennessee, 539 F.3d 526, 531 (6th Cir. 2008), abrogation recognized by Anderson v. City of Blue Ash, 798 F.3d 338 (6th Cir. 2015)). "'[J]udges are not like pigs, hunting for truffles' that might be buried in the record." Emerson v. Novartis Pharm. Corp., 446 F. App'x 733, 736 (6th Cir. 2011) (alteration in original) (quoting United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991)).

The decisive "question is whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Johnson v. Memphis Light Gas & Water Div., 777 F.3d 838, 843 (6th Cir. 2015) (quoting Anderson, 477 U.S. at 251–52). Summary judgment "'shall be entered' against the nonmoving party unless affidavits or other evidence 'set forth specific facts showing that there is a genuine issue for trial.'" Rachells v. Cingular Wireless Employee Services, LLC, No. 1:08CV02815, 2012 WL 3648835, at *2 (N.D. Ohio Aug. 23, 2012) (quoting Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888889, 110 S.Ct. 3177, 111 L.Ed.2d 695). "[A] mere 'scintilla' of evidence in support of the non-moving party's position is insufficient to defeat summary judgment; rather, the non-moving party must present evidence upon which a reasonable jury could find in her favor." Tingle v. Arbors at Hilliard, 692 F.3d 523, 529 (6th Cir. 2012) (quoting Anderson, 477 U.S. at 251). "[I]n order to withstand a motion for summary judgment, the party

5

opposing the motion must present "affirmative evidence" to support his/her position." Mitchell v. Toledo Hosp., 964 F.2d 577, 584 (6th Cir. 1992) (citing Anderson v. Liberty Lobby, 106 S.Ct. 2505, 2510, 2514 (1986); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)). "[C]onclusory assertions, unsupported by specific facts made in affidavits opposing a motion for summary judgment, are not sufficient to defeat a motion for summary judgment." Rachells, 2012 WL 3648835, at *2 (quoting Thomas v. Christ Hosp. and Med. Ctr., 328 F.3d 890, 894 (7th Cir.2003)). Statements contained in an affidavit that are "nothing more than rumors, conclusory allegations and subjective beliefs" are insufficient. Mitchell, 964 F.2d at 584-85.

## III. ANALYSIS

Plaintiff initially moved for summary judgment against Defendants for breach of the Indemnity and Settlement Agreements in the amount of $1,426,001.80; the award of attorneys' fees and costs incurred due to the breach in the amount of $528,827.00; injunctive relief to prevent Defendants from disbursing funds recovered from Nelson contracts; an order requiring Defendants to establish a separate account to protect trust funds; an order requiring Defendants to serve the relevant order on the responsible officer for the Stone Dike Contract. (ECF No. 25-1 at PageID 135.) Defendants filed a timely response in opposition. (ECF No. 26.) Individual Defendants Willie Nelson, Sr. and Hattie Nelson then filed a Notice of Bankruptcy. (ECF Nos. 27-28.) Plaintiff, pursuant to the automatic stay instituted under 11 U.S.C. § 362, then tailored its relief to only Defendant Nelson, Inc. (ECF No. 30 at PageIDs 282-83.) Plaintiff's reply now requests a judgement in the amount of $1,426.001.86, fees and costs, and an order requiring that Defendant Nelson, Inc. deposit funds associated with the Stone Dike contract into a separate account. (Id.)

### A. Breach of the Indemnity Agreement

Plaintiff argues Defendant Nelson, Inc. breached the Indemnity Agreement. (See ECF No. 25-1 at PageID 132.) Defendant Nelson, Inc. contends Plaintiff may not bring this challenge because either (1) such claims are time-barred, or (2) the Indemnity Agreement merged into the Settlement Agreement, precluding claims under the Indemnity Agreement alone. (ECF No. 26-1 at PageID 233, 237.) For the reasons stated below, the Court finds Defendant's arguments unpersuasive. Moreover, the Court finds it is undisputed that Defendant Nelson, Inc. breached the Indemnity Agreement; and thus, the Court GRANTS summary judgment in favor of Plaintiff on the issue of Defendant Nelson, Inc.'s breach of the Indemnity Agreement.

#### 1. Statute of Limitations

Defendant argues that Plaintiff is time-barred from recovery against Defendant Nelson, Inc. (ECF No. 26-1 at PageID 233.) Defendant specifically asserts it has been more than six years[1] since Defendants breached the Indemnity Agreement on February 9, 2010, when third-parties called Plaintiff to remedy Nelson, Inc.'s default. (Id. at PageID 234.) Plaintiff contends its claim is not time-barred because its cause of action accrued when it made payments as the indemnitee and not when third-party claims seeking Plaintiff to remedy Defendants' default occurred. (ECF No. 30 at PageID 284.) The Court agrees with Plaintiff.

"'[T]he right to sue for indemnity for damages resulting from the negligence, misfeasance, or malfeasance of another accrues only when payment has been legally made by the indemnitee,' [but] the loss may also take the form of 'payment, settlement, or through the injured party's obtaining an enforceable judgment.'" Raleigh Commons, Inc. v. SWH, LLC, No. W2011-01298-COA-R3CV, 2013 WL 3329016, at *14 (Tenn. Ct. App. June 28, 2013); see also

---
[1] Contract-based actions are subject to a six-year statute of limitation under Tennessee Law. Tenn. Code Ann. § 28-3-109(a)(3).

7

Triangle Am. Homes v. Harrison, No.E2009-01954-COA-R3CV, 2011 WL 4863713, at *1 (Tenn. Ct. App. Oct. 13, 2011); Stiver Mktg., Inc. v. Performance Bus. Forms, Inc., No. 01-A-019108CH00276, 1991 WL 254564, at *5 (Tenn. Ct. App. Dec. 4, 1991) ("Generally, under an express contract of indemnification, an indemnitee is not entitled to recover under the agreement until he has made an [actual] payment or has otherwise suffered an actual loss. . . .").

Plaintiff's statements indicate that it made payments as an indemnitee for the projects under the Indemnity Agreement after April 27, 2010. (ECF No. 25-2 at PageIDs 195-99 ¶¶ 4, 6; ECF No. 25-2 at PageIDs 200-03.) Defendant Nelson, Inc. does not contest this fact. Because these payments fall within the six-year statute of limitations period,[2] Plaintiff's claim for breach of the Indemnity Agreement is timely.

### 2. Merger Doctrine

Defendant Nelson, Inc. argues that Plaintiff is barred from seeking recovery against Defendants Willie Nelson, Sr. and Hattie Nelson under the Indemnity Agreement because "[u]nder the doctrine of merger the Indemnity Agreement merges into the Settlement Agreement and the Indemnity Agreement is rescinded." (ECF No. 26-1 at PageID 237.) Although claims against Defendants Willie Nelson, Sr. and Hattie Nelson are stayed pursuant to 11 U.S.C. § 362, the Court addresses this argument as far as its result affects claims against Defendant Nelson, Inc.

> The merger doctrine is well-established in Tennessee; the doctrine puts structure to ascertaining the parties' intent where there are successive agreements. See Dunn v. United Sierra Corp., 612 S.W.2d 470, 474 (Tenn. Ct. App. 1980); 17A Am.Jur.2d Contracts § 539 (2011). Synthesizing the holdings in Tennessee caselaw, the merger doctrine has been summarized as follows: "Under the doctrine of merger, parties to a contract may enter into a subsequent agreement concerning the same subject matter as the prior one; the earlier contract . . . merges into the latter contract, and is rescinded or extinguished." Stephen W.

---

[2] Plaintiff filed this action on April 27, 2016. (ECF No. 1.)

8

> Feldman, 22 Tenn. Prac. Series, Contract Law and Practice § 10.11 (2011) (citing cases). For merger to apply, the successive contracts must have the same parties, and they generally "must contain inconsistent terms such that they cannot stand together as supplemental agreements." Id.; see also Restatement (Second) of Contracts § 279 (Supp. 2011). Under these circumstances, the "subsequent contract then stands as the only contract between parties." M & M Props. v. Maples, No. 03A01–9705–CH–00171, 1998 WL 29974, at *10 (Tenn. Ct. App. Jan. 12, 1998).

Shree Krishna, LLC v. Broadmoor Inv. Corp., No. W2011-00514-COA-R3CV, 2012 WL 312254, at *14 (Tenn. Ct. App. Feb. 1, 2012). Moreover, in the absence of a reservation of any rights to damages under the first contract, a contract operating to rescind a former contract, constitutes a final settlement between the parties of any differences they might have under the first contract. Decca Records, Inc. v. Republic Recording Co., 235 F.2d 360, 363 (6th Cir. 1956).

Inconsistency of terms is the crux of the merger doctrine inquiry. Inconsistent terms, read together, are unfeasible. For example, in Dunn v. United Sierra Corp., 612 S.W.2d 470, 473 (Tenn. Ct. App. 1980), the Tennessee Court of Appeals found the terms in a pair of leases, which were the same in all other respects, were inconsistent such that the second lease superseded the first. The first "lease provided that: (1) The lease would run for a term of 99 years . . . . [and] (2) The minimum royalty payment would be the sum of $100.00 per year based on a flat royalty obligation of fifteen cents (15¢) per ton of 'clay or other minerals mined and sold.'" Id. at 473. The second "lease provided that: (1) The term of the lease was indefinite and depended on payment of royalties by the defendants . . . . [and] (2) The minimum royalty payment would be the sum of $100.00 per year based on a flat royalty obligation of thirty cents (30¢) per ton of 'clay or other minerals removed from the leased land.'" Id. These terms were unfeasible when

9

read together, and thus the Tennessee Court of Appeals found the parties' intent was to replace the first lease with the second lease. Id. at 474.

In the instant case, Defendant Nelson, Inc. argues that "the Settlement Agreement is a new contract concerning the same subject matter as the Indemnity Agreement." (ECF No. 26-1 at PageID 235.) Defendant specifically contends that both agreements concern "repayment or indemnification of [Plaintiff] as a result of any loss that may occur as a result of [Plaintiff] issuing security bonds to Defendants." (Id.) Defendant further argues that "[t]he terms of the Indemnity Agreement and Security [sic] Agreement are inconsistent and they are not able to stand as supplemental agreements." (Id. at PageID 236.) Defendant points to three inconsistencies. First, Defendant contends "[t]he Indemnity Agreement does not provide for any payment of a sum certain." (Id.) Second, Defendant argues "the Indemnity Agreement [does not] provide that Defendants pledge personal assets." (Id.) Third, Defendant avers that the Indemnity Agreement required funds acquired by Defendants must be deposited into a trust fund, whereas the Settlement Agreement "states that Mr. and Mrs. Nelson will 'assist and cooperate' with Plaintiff in collecting the remaining contract consideration due or to be paid." (Id. at PageIDs 236-37.) Plaintiff argues that the merger doctrine does not apply for two reasons. First, the doctrine cannot "apply unless all parties in the first agreement are also parties to the second agreement. . . ." (ECF No. 30 at PageID 286.) Second, "the Settlement Agreement specifically reserves to the parties all rights and obligations under the Indemnity Agreement to the extent not otherwise provided in the Settlement Agreement." (Id. at PageID 287.)

The Court finds the merger doctrine does not apply. Without answering whether the merger doctrine may apply to some, but not all, parties between subsequent contracts, the Court finds the terms between the Indemnity and Settlement Agreements are not inconsistent.

Additional terms are not necessarily inconsistent terms. It is feasible that Defendants Willie Nelson, Sr. and Hattie Nelson are bound by the Indemnity Agreement to indemnify or repay Plaintiffs for costs associated with the contracts therein, and by the Settlement Agreement to repay specific costs that have come due. It is feasible for Willie Nelson, Sr. and Hattie Nelson to pledge personal assets under the Settlement Agreement and abide by the terms of the Indemnity Agreement. It is also feasible for Willie Nelson, Sr. and Hattie Nelson to place contract-related funds into a trust and "assist and cooperate" with Plaintiff in collecting the remaining contract consideration due or to be paid. Because the two agreements are feasible when read together, the merger doctrine does not apply. The Court also finds the merger doctrine does not apply because Plaintiff explicitly reserved its rights under the Indemnity Agreement in the Settlement Agreement. (See ECF No. 25-2 at PageID 213.)

In short, the Court finds the merger doctrine does not apply, and thus Plaintiff's claim of breach of the Indemnity Agreement is proper as to Defendant Nelson, Inc.

### 3. No Material Dispute of Genuine Fact

Plaintiff argues that Defendant has failed to indemnify Plaintiff as required by the Indemnity Agreement. (See ECF No. 25-1 at PageID 127.) "As provided in the Indemnity Agreement, the Defendants were to establish a separate account to protect trust funds that should be paid to parties supplying labor and materials for Nelson contracts, and to reimburse [Plaintiff] for such payments it was required to pay." (Id.) Defendant failed to satisfy these requirements as to the Stone Dike contract. (Id.) Defendant Nelson, Inc. does not contest these facts. (See ECF No. 26-1; see also ECF No. 26-2.) Accordingly, the Court finds there is no dispute of material fact as to whether Defendant Nelson, Inc. breached the Indemnity Agreement. The

11

Court, therefore, GRANTS Plaintiff's Motion for Summary Judgment as to Defendant Nelson, Inc. for breach of the Indemnity Agreement.

### B. Breach of Settlement Agreement

Plaintiff argues that Defendant Nelson, Inc. breached the Settlement Agreement. (ECF No. 25-1 at PageID 132.) Defendant contends that "[it] was not a party to the Settlement Agreement and as a result [it] cannot be bound by the terms of the Settlement Agreement and Plaintiff cannot recover any amount from [it] under the terms of the Settlement Agreement." (Id. at PageID 230.)

> Under Tennessee law,
>
> [a] breach of contract claim cannot be asserted against a non-contracting party who has no obligation to perform. See Bonham Group Inc. v. City of Memphis, No. 02A01–9709–CH00238, 1999 WL 219782, at *7 (Tenn.Ct.App. April 16, 1999). Unless a non-contracting third party beneficiary seeks affirmative relief under a contract, the contracting parties have no cause of action against the third party beneficiary. Id. . . . . The beneficiary gets a benefit, not an obligation, at least not until the beneficiary seeks to enforce the benefit under an agreement to which it is not a contracting party. Id.; see Benton v. Vanderbilt University, 137 S.W.3d 614, 619 (Tenn.2004) (stating that, when seeking enforcement of the benefits of a contract, a beneficiary must also accept all implied and express obligations). "To attempt to hold someone liable on a contract to which it is not a party is contrary to common reason." Bonham, 1999 WL 219782, at *7.

Le-Jo Enterprises, Inc. v. Cracker Barrel Old Country Store, Inc., No. M2013-01014-COA-R3CV, 2013 WL 6155622, at *5 (Tenn. Ct. App. Nov. 20, 2013).

In the instant case, it is clear that Nelson, Inc. was a non-contracting, third-party beneficiary to the Settlement Agreement, because Willie Nelson, Sr. and Hattie Nelson were bound to absorb the responsibility to pay and/or ensure payment of Nelson, Inc.'s debt to Plaintiff by assisting Plaintiff in collecting the remaining contract consideration due on all contracts for which Plaintiff issued bonds for Nelson, Inc. It is not clear, however, whether Defendant Nelson, Inc. has attempted to seek affirmative relief under the Settlement Agreement.

12

As discussed above, Defendants sought to merge the Indemnity and Settlement Agreements, but only as to the claims applied to the Willie Nelson, Sr. and Hattie Nelson. This act is not so affirmative as to give Nelson, Inc. an obligation under the Settlement Agreement. The Court, therefore, finds that a genuine dispute of material fact remains as to whether Nelson, Inc. breached the Settlement Agreement. Accordingly, Plaintiff's Motion for Summary Judgment as to Nelson, Inc.'s breach of the Settlement Agreement is DENIED.

C. **Establishment of a Trust Account**

Plaintiff seeks "specific performance of the provision in the indemnity agreement—requesting an order that funds released by the United States Army Corps of Engineers (USACE) for the Stone Dike Contract be placed into a separate account and held in trust to pay the parties, including [Plaintiff]. . . ." (ECF No. 25-1 at PageID 134.) Defendant Nelson, Inc. does not expressly oppose this relief, but maintains that Plaintiff's claims under the Indemnity Agreement are time-barred.

> "Indemnity agreements are enforceable under Tennessee law, and like other contracts, they are to be enforced according to their plain and unambiguous terms." 4 U.S. Fid. & Guar. Co. v. Weed, No. 3:07–1150, 2009 WL 77262, at *3–4 (M.D. Tenn. Jan. 8, 2009) (citations omitted); accord Great Am. Ins. Co. v. SRS, Inc., No. 3:11–cv–970, 2011 WL 6754072, at *6 (M.D. Tenn. Dec. 23, 2011) (citing Hardeman v. Cnty. Bank v. Stallings, 917 S.W.2d 695, 699 (Tenn. Ct. App. 1995)); Ohio Farmers Ins. Co. v. Special Coatings, LLC, No. 3:07–1224, 2008 WL 5378079, at *16–17 (M.D. Tenn. Dec. 28, 2008); Lyndon Prop. Ins. Co. v. Houston Barnes, Inc., No. 3:04–cv174, 2005 WL 1840254, at *4 (E.D. Tenn. July 26, 2005). "[T]he clear language must be interpreted and enforced as written even though it contains terms which may be considered harsh and unjust by a court." Memphis Hous. Auth. v. Thompson, 38 S.W.3d 504, 511 (Tenn. 2001); accord SRS, 2011 WL 6754072, at *6. Also, specific performance of a collateral security obligation of an indemnity agreement is recognized as an appropriate remedy under Tennessee law. SRS, 2011 WL 6754072, at *7; Safeco Ins. Co. of Am. v. Criterion Inv. Corp., 732 F.Supp. 834, 843 (E.D. Tenn. 1989) (applying Tennessee law and holding that "[s]ureties are ordinarily entitled to specific performance of . . . collateral security clauses" (citation omitted)); see also First Nat'l Ins. Co. of Am. v. Sappah Bros. Inc., 771 F.Supp.2d 569, 574 (E.D.N.C.

13

2011) (recognizing "that a surety's loss of its right to collateralization cannot be adequately remedied through monetary damages" (citations omitted)).

Int'l Fid. Ins. Co. v. Sols. to Every Problem, Inc., No. 3:12-CV-37, 2012 WL 2576775, at *5 (E.D. Tenn. July 3, 2012).

The Indemnity Agreement in this case states:

The Undersigned jointly, severally and/or collectively shall exonerate, indemnify, hold harmless and keep the Surety indemnified from and against any and all losses, costs, and/or expenses of whatsoever kind or nature (including, but not limited to, interest, court costs, consultant or expert fees, and counsel fees) and from and against any and all such losses and/or expenses which the Surety may sustain or incur: (1) By reason of having executed or procured the execution of Bonds on behalf of any of the Undersigned. (2) By reason of the failure of the Undersigned to perform or comply with any of the covenants and conditions of this Agreement or (3) In enforcing any of the terms, covenants or conditions of this Agreement. Payment by reason of the aforesaid causes shall be made to the Surety by the Undersigned, upon demand by the Surety, as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefor. The amount of such payment to the Surety by the Undersigned shall be determined by the Surety and the Surety's demand for payment hereunder may at the Surety's option be in addition to and not in lieu of or substitution for any other collateral that may have been previously deposited with Surety by or on behalf of the Undersigned.

. . . .

Undersigned covenant and agree that all funds received by them, or due or to become due under any contract covered by any Bond are trust funds whether in the possession of the Undersigned or another, for the benefit of all parties to whom the Undersigned incurs obligations in the performance of the contract covered by the Bond(s) and/or for the benefit of, payment to or reimbursement of the Surety for any liability, loss or expense the Surety may incur under the Bond(s) or in enforcing this Agreement. If the Surety discharges any such obligation, the Surety shall be entitled to assert the claims of any such party to the trust funds. The Undersigned shall, upon demand of the Surety and in implementation of the trust, open an account or separate accounts with a bank designated by Surety, which account(s) shall be designated as a trust account(s) for the deposit of such trust funds and the Undersigned shall deposit therein all monies received pursuant to said contract. Withdrawals from such account(s) shall be by check or other instrument signed by the Undersigned and countersigned by a representative of the Surety. Notwithstanding anything to the contrary herein above this dedication may be Implemented in any other manner provided at law or in equity.

(ECF No. 25-2 at PageID 21.)

Although these provisions lack express reference to collateral security, they function in a manner similar to a collateral security provision. See, e.g., Far W. Ins. Co. v. J. Metro Excavating, Inc., No. 2:07-CV-11-PRC, 2008 WL 859182, at *9 (N.D. Ind. Mar. 28, 2008) (evaluating a provision that required depositing of "cash or other property acceptable to Surety, as collateral security," until Surety could determine costs, reimbursements, and fees relating to relevant claims); The Hanover Ins. Co. v. Clark, No. 05 C 2162, 2006 WL 2375428, at *6 (N.D. Ill. Aug. 15, 2006) (finding same); American Motorists Ins. Co. v. United Furnace Co., Inc., 876 F.2d 293, 299-300 (2d Cir. 1989) (finding indemnification agreement that stated "[a]ny demand upon [Plaintiff] by the [United States] shall be sufficient to conclude that a liability exists and [Defendant] shall then place [Plaintiff] with sufficient funds as collateral security to cover the liability" rendered onto defendant a collateral security obligation that required defendant to post collateral security in the event of a demand against the plaintiff as surety on their bond). In short, the language of the Indemnity Agreement allows Plaintiff to demand that Defendants post collateral in the amount of the funds received by Defendants in conjunction with contracts covered by the Indemnity Agreement until Plaintiff evaluates costs and reimbursements owed to it and relevant parties. As a collateral security provision, the Court finds Plaintiff is entitled to specific performance. See Safeco Ins. Co. of Am. v. Criterion Inv. Corp., 732 F. Supp. 834, 843 (E.D. Tenn. 1989). Accordingly, the Court GRANTS Plaintiff the relief requested and ORDERS Defendant Nelson, Inc. to place funds released to it by the United States Army Corps of Engineers (USACE) for the Stone Dike Contract into a separate account and held in trust to pay the parties.

### D. Attorneys' Fees and Costs

Plaintiff asserts it is entitled to attorneys' fees and costs under the express language in the Indemnity and Settlement Agreements. (ECF No. 25-1 at PageID 135.) Because the Court does not find Defendant Nelson, Inc. to be an obligated party under the Settlement Agreement, the Court will only address attorneys' fees and costs associated with the Indemnity Agreement. Plaintiff further requests that the "Court set a hearing for determining the fees and costs after the judgment is entered." (ECF No. 30.) Defendant Nelson, Inc. acknowledges that the Indemnity Agreements affords Plaintiff recovery of attorneys' fees and costs in connection with suit, but asserts claims under the Indemnity Agreement are barred under the statute of limitations and/or under the merger doctrine. (ECF No. 26-1.)

Having found Plaintiff's Indemnity Agreement claims are neither barred by the statute of limitations nor the merger doctrine, and that Defendant Nelson, Inc. breached the Indemnity Agreement, the Court finds there is no material dispute of fact that Plaintiff is owed attorneys' fees and costs in association with the Indemnity Agreement. Per Plaintiff's request, the Court will set a hearing to determine the reasonableness of these fees and costs. Thirty (30) days prior to the hearing, Plaintiff shall file an accounting of fees and costs. Fourteen (14) days following Plaintiff's filing, Defendant Nelson, Inc. shall file a response. Plaintiff may file a reply within seven (7) days of Defendant's response.

## IV. CONCLUSION

For the reasons stated above, the Court GRANTS in part and DENIES in part Plaintiff's Motion for Summary Judgment (ECF No. 25). Specifically, the Court GRANTS summary judgment in favor of Plaintiff on the issue of Defendant Nelson, Inc.'s breach of the Indemnity Agreement; DENIES summary judgment in favor of Plaintiff on the issue of Defendant Nelson,

Inc.'s breach of the Settlement Agreement; GRANTS Plaintiff's request for specific performance under the Indemnity Agreement; and GRANTS Plaintiff's request for attorneys' fees and costs under the Indemnity Agreement.

**IT IS SO ORDERED**, this 20th day of April, 2017.

                                          /s/ Jon P. McCalla
                                          JON P. McCALLA
                                          UNITED STATES DISTRICT COURT JUDGE