**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| GREAT AMERICAN INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| AND | ) ) | |
| INTEGRATED CONSTRUCTION, LLC, | ) ) | |
| Intervenor-Plaintiff, | ) ) | |
| AND | ) ) | |
| GEODESY PROFESSIONAL SERVICES, LLC, | ) ) ) | |
| Intervenor-Plaintiff, | ) ) | |
| v. | ) ) | No. 2:16-cv-02283-TLP-cgc |
| NELSON, INC., WILLIE NELSON SR., and HATTIE NELSON, | ) ) ) | |
| Defendants. | ) | |

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS GEODESY
PROFESSIONAL SERVICES, LLC'S FIRST AMENDED INTERVENING
COMPLAINT**

Geodesy Professional Services, LLC ("Geodesy") filed an intervening complaint

against Defendant, Nelson, Inc. ("Nelson") alleging that Nelson has not paid for various

services including surveying and consulting. Arguing that Geodesy's claims fall outside the

statutes of limitation, are subject to arbitration, and that there is no enforceable oral contract

for expert services allegedly rendered, Nelson moves to dismiss Geodesy's intervening action

under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  For the following reasons, the

Court finds that Geodesy has sufficiently pleaded all of its claims.  Defendant's Motion is

therefore DENIED.

## BACKGROUND

The U.S. Army Corps of Engineers ("USACE") hired Nelson to be the main contractor

for the Stone Dike Project.  (ECF No. 1 at PageID 2.)  Plaintiff, Great American Insurance

Company ("GAIC"), issued performance and payment bonds on behalf of Nelson to ensure

that it could complete its contractual obligations and pay for labor associated with those

contracts, like the contract with USACE on the Stone Dike Project.  (*Id*.)  In return, Nelson

entered into an Indemnity Agreement with GAIC.  (*Id*.)  Because GAIC allegedly paid about

$2.7 million on behalf of Nelson related to the Stone Dike Project, it sued Nelson for breach

of contract, breach of indemnity agreement, and injunctive relief, alleging, among other

things, that Nelson has not repaid it for surety bond that it issued for Nelson to maintain the

bid.  (*Id*. at PageID 3.)

Meanwhile, Geodesy entered into a contract with Nelson to perform work as a

subcontractor on the Stone Dike Project.  (ECF No. 105 at PageID 1267.)  Nelson hired

Geodesy to perform certain surveying services.  (*Id*.)  The agreement tasked Geodesy with

providing a topographical layout of land along the Mississippi River, and then comparing that

information against the proposed plans for the Stone Dike Project to check for topographical

discrepancies.  (ECF No. 105-1 at PageID 1291.)

Later, USACE terminated its contract with Nelson.  (ECF No. 105 at PageID 1268.)

Geodesy alleges that Nelson then asked Geodesy to provide additional expert witness and

consulting services to support Nelson's claim against USACE.  (*Id*.)  Thanks in part to

Geodesy's assistance, Nelson eventually received a favorable judgment in its dispute with USACE.  (ECF No. 105 at PageID 1270.)  That is when the litigation between the parties here really began.

GAIC sued Nelson first in 2010[1] and again here in 2016.  The Court entered summary judgment in favor of GAIC which led to the establishment of a trust account to hold the settlement funds from the first case.  (ECF No 35.)  Those settlement funds would then satisfy the claims from various subcontractors from the Stone Dike Project.  (ECF No. 45 at PageID 463–69.)

During this case, Nelson entered into a joint stipulation agreement with GAIC which governs for the disbursement of the settlement funds.  (ECF No. 105 at PageID 1268.)  Notably, the joint stipulation agreement lists Geodesy as a party to receive funds.  (*Id*.)  Yet Nelson still has not paid Geodesy.  So it intervened in this lawsuit.  (*Id*. at PageID 1269.)

## STANDARD OF REVIEW

According to Rule 8 of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  In practice, Rule 8 requires that a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see Engler v. Arnold*, 862 F.3d 571, 575 (6th Cir. 2017).

---

[1] *See Great American Insurance Company v. Nelson, Inc. et al.*, 2:10-cv-02691-JPM-cgc, (W.D. Tenn., Sept. 22, 2010).

A court will grant a motion to dismiss if a plaintiff has no plausible claim for relief. But a court must review the complaint in a light most favorable to the plaintiff. *See Herhold v. Green Tree Serv., LLC*, 608 F. App'x 328, 331 (6th Cir. 2015). "A complaint should only be dismissed if it is clear to the court that 'no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Id*. (quoting *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855 (6th Cir. 2003)).

**ANALYSIS**

I.      **Geodesy's Claims are not Barred by the Statute of Limitations.**

Nelson argues that Geodesy's breach of contract, unjust enrichment, quantum meruit, and fraudulent inducement claims are time-barred by their respective statutes of limitation. (ECF No. 106 at PageID 1304.) On the one hand, Nelson claims that these causes of action began to accrue no later than November 5, 2009, when Geodesy sent Nelson its final invoice for work related to the Stone Dike Project. (ECF No. 106 at PageID 1305.) Geodesy, on the other hand, claims that "Nelson did not breach the contract until October 30, 2017, when for the first time, Nelson denied Geodesy's invoices submitted as part of the claims process arising out of the settlement between Nelson and [USACE]." (ECF No. 114 at PageID 1338.) Put differently, Geodesy maintains that Nelson agreed to pay it for its services on both the Stone Dike Project and its expert consulting in the USACE litigation once the latter settled. (*See* ECF No. 114 at PageID 1338–39.)

Under Tennessee law, the statute of limitations for breach of contract, unjust enrichment, and quantum meruit is six years. *See* Tenn. Code Ann. § 28-3-109; *McGhee v. Shelby Cty. Gov't*, No. W2012-00185-COA-R3CV, 2012 WL 2087188, at *3 (Tenn. Ct. App. June 11, 2012) ("the statute of limitations is six years for allegations sounding solely in

4

contract"); *Estate of Lyons v. Baugh*, No. M201700094COAR3CV, 2018 WL 3578525, at *4

(Tenn. Ct. App. July 25, 2018) (an unjust enrichment claim is "an action on a contract," and

so has a limitation of six years); *Metro. Gov't of Nashville & Davidson Cty. v. Cigna*

*Healthcare of Tennessee, Inc.*, 195 S.W.3d 28, 32 (Tenn. Ct. App. 2005) ("[a]n action brought

upon the theory of unjust enrichment is essentially the same as quasi-contract [and] quantum

meruit"). The statute of limitation for fraudulent inducement, though, is three years. *Am. Fid.*

*Fire Ins. Co. v. Tucker*, 671 S.W.2d 837, 841 (Tenn. Ct. App. 1983) ("The applicable statute

of limitation . . . [for] fraud in the inducement . . . [is] three-year[s] . . . ."); *see* Tenn. Code

Ann. § 28-3-105.

Furthermore, a cause of action for breach of contract begins to accrue "on the date of

the breach," a cause of action for unjust enrichment "accrues on the date that money is

retained under circumstances where it would be unjust to do so," a "quantum meruit action

accrued when plaintiff rendered his final services," and fraudulent inducement accrues "at the

time that the plaintiff should have discovered them through reasonable diligence." *McGhee v.*

*Shelby Cty. Gov't*, No. W2012-00185-COA-R3CV, 2012 WL 2087188, at *1 (Tenn. Ct. App.

June 11, 2012) (breach of contract); *Radon Serv. Agreement Corp. v. Radon Serv. Agreement,*

*Inc.*, No. 3-:04-CV-370, 2005 WL 2086010, at *2 (S.D. Ohio Aug. 26, 2005) (unjust

enrichment); *Baer v. Chase*, 392 F.3d 609 (3d Cir. 2004) (quantum meruit); *Fite ex rel. H &*

*M Const. Co. v. Fite*, No. 02A01-9710-CH-00266, 1999 WL 317102, at *7 (Tenn. Ct. App.

May 19, 1999) (fraudulent inducement).

For purposes of a motion to dismiss, the Court must accept as true Geodesy's claim

that "Nelson did not breach the contract until October 30, 2017, when for the first time,

Nelson denied Geodesy's invoices submitted as part of the claims process arising out of the

settlement between Nelson and [USACE]." (ECF No. 114 at PageID 1338.); *Iqbal*, 566 U.S. at 678 (2009). Alternatively, Geodesy sufficiently pleaded that it was a named beneficiary in a September 18, 2017, joint stipulation agreement between Nelson and GAIC and that this entire action is based on that agreement. (ECF No. 80 at PageID 911.)

Geodesy's claims for either theory fall comfortably within the three-year or six-year limitation periods. *See* Tenn. Code Ann. § 28-3-109; Tenn. Code Ann. § 28-3-105; *McGhee*, 2012 WL 2087188, at *3; *Estate of Lyons*, 2018 WL 3578525, at *4; *Metro. Gov't of Nashville & Davidson Cty.*, 195 S.W.3d at 28; *Am. Fid. Fire Ins. Co.*, 671 S.W.2d at 841. The Court, therefore, declines to dismiss any of Geodesy's claims on grounds that the alleged claims fall outside their respective statutes of limitation.

II.     **Geodesy's Claims Arising from the Stone Dike Project are not Subject to a Binding Arbitration Agreement.**

Nelson asserts that Geodesy's claims arising from work performed on the Stone Dike Project must be dismissed because the Parties' contract contains an enforceable and binding arbitration clause. (ECF No. 106 at PageID 1305.) The Parties signed a "Standard Form of Agreement Between Contractor and Subcontractor," that covered each Parties' obligations to the other for the Stone Dike Project. (ECF No. 105-1 at PageID 1277.) Section 6.1.1 states in part that the Parties "shall be subject to mediation as a condition precedent to arbitration or the institution of legal or equitable proceedings by either party." (*Id.* at PageID 1282.) Section 6.2.1 provides that any "claim arising out of or related to this Subcontract . . . shall be subject to arbitration. Prior to arbitration, the Parties shall endeavor to resolve disputes by mediation in accordance with the provisions of Section 6.1." (*Id.*)

"An arbitration agreement may be invalidated for the same reasons for which any contract may be invalidated, including forgery, unconscionability, and lack of consideration."

*Fazio v. Lehman Bros.*, 340 F.3d 386, 394 (6th Cir. 2003). "If the language used by the parties is plain, complete, and unambiguous, the intention of the parties must be gathered from that language, and from that language alone." *Empress Health & Beauty Spa, Inc. v. Turner*, 503 S.W.2d 188, 190 (Tenn. 1973). "Waiver is the voluntary relinquishment or renunciation of some right, the foregoing or giving up of some benefit or advantage, which, but for such waiver, the party would have enjoyed." *Wilson v. Americare Sys., Inc.*, No. M200800419COAR3CV, 2009 WL 890870, at *5 (Tenn. Ct. App. Mar. 31, 2009). "It may be proved by . . . acts and declarations manifesting an intent and purpose not to claim the supposed advantage; or by so neglecting and failing to act as to induce a belief that it was the party's intention and purpose to waive the benefit or advantage." *Id*.

Geodesy first asserts that the arbitration clause is ambiguous because section 6.1 appears to allow for an election between either "arbitration or the institution of legal or equitable proceedings," while section 6.2 states that all claims "shall be subject to arbitration." (ECF No. 114 at PageID 1343); (ECF No. 105-1 at PageID 1282.) Read with section 6.2, though, section 6.1 merely contemplates "the institution of legal or equitable proceedings" in circumstances "provided in [s]ection 4.1.5," which concerns work performed by the subcontractor which the contractor or architect later rejects as non-conforming. (ECF No. 105-1 at PageID 1280, 1282.) Indeed, other courts have no trouble interpreting similar standard form contracts as unambiguous. *See S. Elec. Servs., Inc. v. Cornerstone Det. Prod., Inc.*, No. 7:10CV00076, 2010 WL 2233664, at *3 (W.D. Va. June 3, 2010); *Spartan Drywall Builders, Inc. v. Post Goldtex, L.P.*, No. 1182 EDA 2015, 2016 WL 490034, at *2 (Pa. Super. Ct. Feb. 5, 2016).

Geodesy then argues that Nelson waived its right to arbitration because its "conduct in this litigation has served to unnecessarily protract the litigation in order to reduce, wear down and eliminate its creditor's rightful claims to their funds . . . ." (ECF No. 114 at PageID 1343.) On September 18, 2017, Nelson entered into a joint stipulation with GAIC—in this lawsuit—agreeing to pay several parties, including Geodesy as soon as they received the funds in the SunTrust account. However, the stipulation noted that they had not agreed on the amount of the payment to Geodesy. (ECF No. 46.) In particular, the agreement provided "[a]fter depositing the Settlement Funds into the Trust Account, Nelson, Inc. shall immediately pay the specific amounts it has agreed to pay certain parties . . . ." (*Id*. at PageID 516.) Nelson was only supposed to collect "the balance of funds less amounts for Tetra Tech and Geodesy . . . ." (*Id*. at PageID 519.) USACE deposited the funds into the SunTrust Bank account on October 4, 2017. (ECF No. 92 at PageID 1125.) As of this filing, more than one year later, Nelson still has not paid Geodesy. (ECF No. 105 at PageID 1269.)

First, by entering into the joint stipulation Nelson shows that it did not intend "to claim the supposed advantage" of arbitration. *Wilson v. Americare Sys., Inc.*, 2009 WL 890870, at *5. At a minimum, the act of stipulating in court that it owed Geodesy money without reserving the right to take it to arbitration—even if the parties had not agreed on an amount— would have reasonably "induce[d] a belief that it was the party's intention and purpose to waive the benefit or advantage [of the arbitration clause]." *Id*. Second, Nelson has had more than eight years to begin arbitration proceedings should it have so desired. *See Great American Insurance Company v. Nelson, Inc. et al.*, 2:10-cv-02691-JPM-cgc, (W.D. Tenn., Sept. 22, 2010). This demonstrates a clear "fail[ure] to act . . . [so as] to waive the benefit or

advantage [of the arbitration clause]." *Wilson v. Americare Sys., Inc.*, 2009 WL 890870, at *5.

Even more, when one considers fairness it is not right or fair for Nelson to sign a stipulation and file it with this Court agreeing that it owes money to Geodesy only to then stonewall on the payment of that money for several months. And more than a year later, after Geodesy went to the trouble to intervene here, Nelson then tried to delay payment again by asserting that the arbitration clause governs this claim. This Court should not and will not reward this behavior. The Court finds that Nelson has waived its right to assert arbitration.

### III. Geodesy has Sufficiently Pleaded There was an Oral Contract for Expert Services.

Geodesy alleges in its complaint that one of Nelson's attorneys asked Geodesy to provide "expert witness and consulting services" to help Nelson in its lawsuit against USACE. (ECF No. 105 at PageID 1268.) Geodesy also attached to its complaint what it claims to be an invoice it sent Nelson. (ECF No. 105-3 at PageID 1296.) In Tennessee, an oral contract is valid where there is (1) "mutual assent" to the agreement; and (2) such terms are "sufficiently definite." *Castelli v. Lien*, 910 S.W.2d 420, 427 (Tenn. Ct. App. 1995).

As to the first element, Nelson acknowledges that "the plain language of the [invoice] provided by Geodesy establishes that it had some type of agreement with [Nelson's attorney] for professional services." (ECF No. 106 at PageID 1309.) Nelson claims, though, that because "experts are normally hired by lawyers and not clients," Geodesy cannot establish mutual assent with Nelson. (*Id.*) Even so, Tennessee law is clear that a "lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation." Tenn. Sup. Ct. R.8, RPC 1.2. Viewing the complaint in the light most favorable to Geodesy, the Court can and will infer that Nelson's attorney was acting on behalf of Nelson when he

9

allegedly sought expert services from Geodesy.  *See Herhold*, 608 F. App'x at 331.  Geodesy

has thus satisfied the 'mutual assent' element for purposes of a motion to dismiss.

Though Nelson does not appear to contest the issue, the Court also finds that Geodesy

has sufficiently pleaded that the alleged oral contract is definite enough.  The invoice provides

exact amounts charged for specific services allegedly rendered.  (ECF No. 105-3 at PageID

1296.)  For example, the invoice shows that on one occasion Geodesy provided eight hours of

"[t]echnical/[p]rofessional [s]upport" in exchange for $1,000.00.  (ECF No. 105-3 at PageID

1296.)  The Court therefore finds that Geodesy has sufficiently alleged there was an oral

contract for expert services between the two Parties.

## CONCLUSION

For the reasons noted above, this Court finds that Plaintiff's Complaint contains

"sufficient factual matter" to "state a claim to relief that is plausible on its face," for all claims

alleged.  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)); *see Engler*, 862 F.3d at 575.  As a result, this Court DENIES Defendant's Motion to

Dismiss.

**SO ORDERED**, this 16th day of November, 2018.

s/ Thomas L. Parker
THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE

10